IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DR. ROBERT L. MEINDERS, D.C., LTD., individually and as the representative of a class of similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> THE EMERY WILSON CORPORATION, d/b/a STERLING MANAGEMENT SYSTEMS, and JOHN DOES 1-12, <br><br> Defendants. | ) ) ) ) ) Case No. 14-cv-00596 ) ) ) ) Judge Staci M. Yandle ) ) ) ) Magistrate Judge Stephen C. Williams ) ) ) ) ) |

PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF ITS AMENDED MOTION CLASS CERTIFICATION

Pursuant to Fed. R. Civ. P. 23 (a), (b) (3) and (g), Plaintiff Dr. Robert L. Meinders, D.C. Ltd., ("Plaintiff") submits this Memorandum of Law in Support of Class Certification.

## INTRODUCTION

On March 2, 2013, Plaintiff received an unsolicited fax advertisement from Defendant, The Emery Wilson Corporation d/b/a Sterling Management Systems ("Defendant"), advertising and promoting Defendant's "workshops." This fax did not contain a compliant opt-out notice. Plaintiff did not ask for the fax or give Defendant permission to send it. The evidence shows that for years, Defendant sent the same fax advertisement, without opt-out notices, to thousands of persons in violation of the Telephone Consumer Protection Act ("TCPA").

The TCPA forbids the use of "any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227 (b) (1) (C). An "unsolicited advertisement" is "any material advertising the commercial

1

availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227 (a) (5). Junk faxing has been called "advertising by theft," because the advertiser forces the recipient to pay for the costs of printing and distribution. The TCPA not only protects against unsolicited fax advertisements, but also fax advertisements that are non-compliant with necessary opt-out requirements. The required opt-out language provides the fax recipient with an easy way to unsubscribe from receiving any further communication via fax, and any fax advertisement sent without compliant language is in violation of the TCPA. The TCPA relies on private enforcement.

Plaintiff seeks certification of a class of those persons who were successfully sent Defendant's form advertisements by fax. The Court should certify a class so the claims about Defendant's fax advertising campaign can be resolved on a class-wide basis. All of the requirements of Fed. R. Civ. P. 23 are satisfied here. Indeed, this case is ideal for certification as a class action because it involves no individual issue of law or fact and the merits of the case can be resolved on a class-wide basis. Because the claims of each individual class member are too modest to justify individual lawsuits, a class action is the only effective means of resolving this controversy.

Plaintiff requests that the Court certify the class, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as class counsel.

## **FACTS**

Defendant's form advertisement was successfully faxed to thousands of persons in the four years prior to April 3, 2014. Copies of the following are attached to illustrate Defendant's fax advertising: (1) Defendant's Responses and Objections to Plaintiff's First Set of

Interrogatories ("Exhibit A"); (2) Defendant's Responses and Objections to Plaintiff's First Set of Request for Production ("Exhibit B"); (3) Defendant's Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories ("Exhibit C"); (4) Defendant's Supplemental Objections and Responses to Plaintiff's First Set of Request for Production ("Exhibit D"); (5) Defendant's Responses and Objections to Plaintiff's Second Set of Interrogatories ("Exhibit E"); (6) Deposition of Dana Moraru ("Exhibit F"); (7) Deposition of Joshua Gillion ("Exhibit G"); (8) Screenshots of "Central Files" Database ("Exhibit H"); (9) Screenshots of "Dead File" Database ("Exhibit I"); (10) Class Action Complaint ("Exhibit J"); (11) Defendant's Answer ("Exhibit K"); (12) Defendant's AT&T Records ("Exhibit L") (Plaintiff has redacted the numbers of the fax recipients, but possesses an unredacted copy that can be used to identify class members); (13) Graph of Defendant's AT&T Records ("Exhibit M").

I.  **Parties.**

Plaintiff is an Illinois corporation that conducts business in St. Clair County, Illinois. Class Action Complaint (Exhibit J) at ¶ 6. Defendant is a corporation with its headquarters in Glendale, California, and conducts business in St. Clair County, Illinois. Complaint at ¶ 7; Defendant's Answer (Exhibit K) at ¶ 7.

II. **For years, Defendant marketed its business by sending mass quantities of fax advertisements.**

In an effort to promote its business, Defendant's marketing department created a standard and customizable fax advertisement that would be tailored to promote "workshop seminars" in different cities at different times. Exhibit G at 32:9-11; Exhibit F at 56:19-23; Exhibit K, Ex. A and B. Significantly, none of the fax advertisements utilized by Defendant contained the legally-required opt-out language. *See* Exhibit J, Ex. A and B; Exhibit G, Ex. 2-11. These fax advertisements were not specifically tailored to each individual recipient, rather the

3

advertisements were general faxes sent on a mass scale to a large group of people contained within Defendant's two databases. Exhibit F at 56:6-15; Exhibit G at 31:7-32:4. While the fax advertisements sent out by Defendant changed from city to city, depending on the upcoming "workshop seminar" promotions, the basic layout and content of the fax advertisements sent out were the same. Exhibit F at 124:8-23. Former employee Joshua Gillion testified that he personally faxed out several variations of these fax advertisements for Defendant. Exhibit G at 60:9-69:21, Exs. 3-11. Including the version sent to Plaintiff. *Id*. at 45:8-25, 55:6-58:1.

      Defendant used the information in their own "central files" database to send out fax advertisements promoting their "workshop seminars." *Id*. at 51:9-15, 52:10-12. The "central files" database is a storage center for contact information of anyone who expressed interest in a product or service of Defendants. *See* Exhibit F at 42:3-45:9. The information is gathered after a prospective customer has returned a postcard sent out by Defendant and signed a contract to attend one of Defendant's "workshops," or receive a different product from Defendant. *Id*. at 42:3-10. Defendant's "workshop seminars" occurred about eleven times a year around the county. Exhibit G at 14:19-25. The "workshop seminars" would consist of a series of lectures and an opportunity to meet with the Defendant's consultants. *Id*. at 14:19-16:4. These lectures promoted Defendant's management techniques and allowed Defendant to act as a "business consultant" for each particular client. *Id*.

      If a recipient complained about being sent a fax advertisement, Defendant created a "written removal request" form that was sent to the central file officer, Eve Alroth. Exhibit F at 49:10-50:11; Exhibit G at 38:4-39:9. Generally, Defendant saved these forms. Exhibit F at 50:5-7. Defendant then moved the recipient's contact information into the "dead file" database. *Id*. at 45:18-47:4. The "dead file" database has a field that reflects the time period when a fax recipient

4

is moved from the "central files" database to the "dead-file" database. *Id*. at 47:20-48:9. Only people that are sent faxes advertising Sterling management programs are people that are in the "central file" database. *Id*. at 50:12-15, 51:9-15.

### III. Defendant's records show that it successfully sent over a hundred thousand advertisements by fax.

Defendant conducted its fax advertisement campaign from two Xerox fax machines located in its office. *Id*. at 69:13-74:2. Defendant used these fax machines "most days" to send out fax advertisements promoting Defendant's "workshop seminars." Exhibit G at 46:15-22, 48:20-49:6, 58:18-23. These fax machines had the fax numbers of (818) 241-4837 and (818) 241-0271. Exhibit F at 74:7-18. Defendant's telephone carrier during the relevant time period was AT&T. *Id*. at 74:19-21.

As detailed above, Defendant sent its fax advertisements to numbers from its "central files" database. Exhibit F at 51:9-15, 52:10-12. Whenever a recipient complained of receiving a fax advertisement, its number was transferred into the "dead file" database. *Id*. at 50:8-15. Significantly, Defendant has produced screenshots of both databases. See Exhibit H, Exhibit I. The produced screenshots demonstrate 2,322 client fields in the "central file" database with some data in the fax field and 41 entries in the "dead file" database with fax numbers associated with their profiles. See Exhibit H; Exhibit I; Exhibit F at 47:20-48:9.

Defendant's AT&T transmission records of the subject fax machines used by Defendant to send out fax advertisements demonstrate a steady and expansive fax advertisement campaign. See Exhibit L; Exhibit M. In total, over the relevant time period, Defendant sent out 134,715 fax faxes from the two aforementioned fax machines. *Id*. Moreover, the AT&T records establish that Defendant would regularly fax over 100 faxes in a day from one machine – an indication that the faxing was not done in accordance with a recipient's requests to receive information via fax, but

5

rather that the faxes were sent out in a fax blast as a part of an overall marketing campaign. *Id*. Furthermore, the AT&T records reveal that the subject faxes were sent within minutes of one another – another hallmark of a fax blast marketing campaign. *Id*.

### IV.  Defendant never obtained consent or permission to send fax advertisements to Plaintiff and the putative class.

Neither Plaintiff nor the putative class members invited or gave Defendant permission to send them fax advertisements. Complaint at ¶¶ 14, 16. Moreover, despite Defendant's contentions otherwise, Defendant has failed to produce *any* evidence that demonstrates Plaintiff agreed to receive fax advertisements. *See* Exhibit F at 164:9-168:11. Similarly, Defendant has failed to produce any evidence that any other member of the putative class expressly consented to receive fax advertisements. *Id*. Instead, the testimony so far indicates Defendant has destroyed any alleged notes that could have possibly contained evidence of prior express consent. Exhibit G at 36:6-18, 51:12-24.

### V.  Defendant's faxes did not contain the required opt-out notice.

On July 9, 2005, Congress enacted the Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (2005) (the "JFPA"). The JFPA expressly provides that a fax advertiser can rely upon an EBR to send advertising faxes only if the first-page of the fax contains a clear and conspicuous opt-out notice meeting particular requirements. *See FCC's Report and Order and Third Order on Reconsideration*, 21 F.C.C.R. 3787, 3800-01, 2006 WL 901720 (April 5, 2006) ("We emphasize that including an opt-out notice on a facsimile advertisement alone is not sufficient to permit the transmission of a fax; an EBR with the recipient must also exist."). See also 47 U.S.C.A. § 227 (b) (2) (D) (i) and (ii).

Courts have certified class actions where, as here, defendant sent an advertisement by fax without the opt-out notice language required by the TCPA and 47 C.F.R. § 64.1200 (a) (3) (iii).

6

*See, e.g., Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 2012 WL 5248420 (C.D. Cal. Oct. 23, 2012); *Holtzman v. Turza*, No. 08 C 2014, 2010 WL 4177150 (N.D. Ill. Oct. 19, 2010) ("It is undisputed that none of the [faxes sent], which the court has already found to be unsolicited advertisements, included such a notice. Consequently, defendant is liable for every fax received by the plaintiff class regardless of whether he had an established business relationship with any of the recipients"); *Garret v. Ragle Dental Laboratory, Inc.*, No. 10 C 1315, 2010 WL 4074379, *1 (N.D. Ill. Oct. 12, 2010) (Bucklo, J.) (certifying a TCPA case where the class members were "not provided an 'opt out' notice that complies with federal law"); *Houttekier v. Chiropractic Leadership Alliance*, Case No. CI 200904888, Opinion and Judgment Entry, (Ohio C.P. July 7, 2010) ("Careful review of the faxes demonstrate that they indeed lack the requisite opt out features and information . . . Consequently, the faxes are in violation of the TCPA in this respect and any business relationship is irrelevant."); *(Talty v. Strada Capital Corp.*, 2009 WL 3328042 (Ohio C.P. 2009) (absence of a proper opt-out notice was itself an actionable violation of the TCPA.);*Tyron v. Nationwide Chem.*, 2007 WL 4965139 (Ohio C.P. 2007) (same); *A & L Abatement, LLC, v. Construction Expo Inc.*, 08 CV 1223 (Dist. Ct. Denver County, Colo. Oct. 28, 2009).

The opt-out notice requirements are outlined in 47 U.S.C. § 227 (b) (2) (D). First, the "clear and conspicuous" notice shall be on the "first page of the unsolicited advertisement." 47 U.S.C. § 227 (b) (2) (D) (i).  Second, the clear and conspicuous notice must inform the fax recipient that they may make a request to the sender not to send any future advertisements and that the sender's "failure to comply, within the shortest reasonable time … is unlawful." 47 U.S.C. § 227 (b) (2) (D) (ii). Third, the notice must include both a domestic contact telephone and a fax number that the fax recipient can use to transmit an opt-out request. 47 U.S.C. § 227

(b) (2) (D) (iv) (I). Fourth, the notice must include a "cost free mechanism" for the recipient to transmit an opt-out request. 47 U.S.C. § 227 (b) (D) (iv) (II). Additionally, the opt-out request must be available to the recipient "at any time on any day of the week." 47 U.S.C. § 227 (b) (2) (D) (v).

Here, a review of Defendant's fax advertisements shows that none of them contained a statutorily compliant opt-out notice. *See* Exhibit K, Ex. A & B. As such, any EBR defense Defendant might attempt to claim is unfounded and cannot serve to defeat class certification.

## ARGUMENT

### I. Applicable legal standards.

To achieve class certification, Plaintiff must demonstrate that Rule 23 (a)'s four prerequisites are satisfied: (1) that the proposed class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative party are typical of the claims of the class; and (4) that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23 (a). In addition to satisfying the requirements of Rule 23 (a), the plaintiff must satisfy one of the subsections of Rule 23 (b). *Id.*

Class actions promote judicial economy by aggregating small claims into one lawsuit. Further, "[c]lass actions...permit the plaintiffs to pool claims which would be uneconomical to litigate individually. [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 808-809 (1985). Here, Rule 23 (a) and (b) (3) are both met.

### II. The weight of authority favors class certification in this case.

Class actions promote judicial economy by aggregating small claims into one lawsuit.

"Class actions … permit the plaintiffs to pool claims which would be uneconomical to litigate individually. [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 808-809 (1985); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1977) (class actions aggregate "relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

Judges both inside and outside of this Circuit have routinely certified TCPA cases: *See Saf-T-Gard Int'l v. Vanguard Energy Servs., LLC*, No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (Gottschall, J.); *G.M. Sign, Inc. v. Group C Comm., Inc.*, No. 08-CV-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) (Darrah, J.); *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) (Gettleman, J), *judgment for Plaintiff on appeal* (Nos. 11-3188 and 11-3746); *Green v. Service Master*, No. 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) (Hibbler, J.); *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) (Bucklo, J.), *app. denied* (08-8012); *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008) (*Sadowski* II) (Aspen, J.); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 679 F. Supp. 2d 894 (N.D. Ill. 2010) (Shadur, J.); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 CV 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) (Kendall, J.); *Paldo Sign v. Topsail*, No. 08 C 5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010); and *CE Design v. Cy's Crabhouse*, 259 F.R.D. 135, 139 (N.D. Ill. 2009) (Kennelly, J.). *See also Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 645 (W.D. Wash. 2007); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, No. 10-10620, 2010 WL 5439737, *2 (E.D. Mich. Dec. 27, 2010); *The Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, --- F.R.D. ----, 2012 WL 262556, *4 (N.D. Ohio Jan. 30, 2012); and *Reliable Money Order, Inc. v.*

*McKnight Sales Co., Inc.*, No. 10-C-242, 281 F.R.D. 327 (E.D. Wis., 2012) *Rule 23 (f) petition affirmed* ---F.3d---, 2013 WL 85937 (7th Cir., 2013).

Moreover, numerous Illinois courts have found class certification warranted in junk fax claims. *See*, *e.g.*, Order, *Byer v. Eniva*, No. 11 CH 05322 (Cook Cty. Cir. Ct. Nov. 14, 2014) (Martin, J.); *Loncarevic and Assocs. Inc. v. Stanley Foam Corp.*, No. 09 CH 15403, 2013 WL 1783625 Order (Cook Cty. Cir. Ct. April 4, 2013) (Atkins, J.); *Windmill Nursing Pavilion, Ltd. v. Gornick's Auto Rebuilders, Inc*, No. 09 CH 15975, 2013 WL 1783624 (Cook Cty. Cir. Ct. April 17, 2013) (Atkins, J.) (Exhibit S); *Green v. Dahn Yoga & Health Centers, Inc.,* No. 07 CH 29482 (Cook Cty. Cir. Ct. Nov. 19, 2013) (Pantle, J.); *Windmill Nursing Pavilion, Ltd. v. Res-Care Illinois, Inc.,* 09 CH 16377 (Cook Cty. Cir. Ct. March 19, 2011) (Quinn, J.).

**III.    The Court should certify a class.**

**A.  Class definition.**

Plaintiff proposes the following class:

> All persons in Defendant's "central file" or "dead file" databases who were successfully sent one or more facsimiles in the four years prior to April 3, 2014, from Defendant The Emery Wilson Corporation, d/b/a Sterling Management Systems advertising its goods and services.

The Seventh Circuit has held that a class definition is appropriate when it identifies a particular group of individuals harmed in a particular way during a specific period in particular areas. *See Mullins v. Direct Digital, LLC*, No. 15-1776, 2015 WL 4546159, at *1 (7th Cir. July 28, 2015). Here, Plaintiff's proposed class definition has done just that, and therefore is appropriate.[1]

---

[1] As noted throughout Plaintiff's Motion, Defendant's AT&T records demonstrate countless days where Defendant sent 100+ faxes per day, often in quick succession of one another – a hallmark of illegal fax broadcasting. *See* Exhibit L, Exhibit M. Were the Court to be hesitant to certify everyone who was successfully sent a facsimile during the relevant time period, it could easily certify the class: all persons in Defendant's "central file" or "dead file" databases who were sent

## IV.     The Court should certify the class because all the requirements are met.

In order to maintain a class action, Plaintiff must show (1) that the proposed class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative party are typical of the claims of the class; and (4) that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

To proceed with a class under Rule 23(b)(3), the plaintiff must also show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Each of the elements is satisfied here.

### A.     Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002).

Here, Defendant's "central file" and "dead file" databases show 2,363 persons. *See* Exhibit H, Exhibit I. Defendant's own testimony has established that it had a consistent practice of sending fax advertisements to numbers in its "central file" database. Exhibit F at 51:9-15, 52:10-12, 69:13-74:2; Exhibit G at 46:15-22, 48:20-49:6, 58:18-23. Furthermore, the provided screen shots of both the "central file" database and the "dead file" database identify thousands of

---

one or more facsimiles on a day when Defendant transmitted 100+ facsimiles in the four years prior to April 3, 2014, from Defendant The Emery Wilson Corporation, d/b/a Sterling Management Systems advertising its goods and services. Just like the proposed class definition, this alternate class definition would satisfy all FRCP 23 requirements necessary for class certification.

11

persons who had a fax number associated with their "customer profile." See Exhibit J; Exhibit I. Additionally, Defendant's AT&T records demonstrate that, during the relevant time period, Defendant sent out 134,715 fax transmissions. See Exhibit L; Exhibit M. Moreover, the fax broadcasting was often done in waves of over 100+ faxes per day, often within close temporal proximity with one another. See Exhibit L; Exhibit M. These practices are hallmarks of illegal fax blasting. This is strong evidence that Defendant sent fax advertisements to many of these numbers numerous times over the last four years. Consequently, the putative class has over 2,000 members.

What's more, none of the fax advertisements sent out by Defendant contained the required "opt-out" language, and therefore were in violation of the TCPA. See Exhibit K, Ex. A and B; Exhibit G, Ex. 2-11. Therefore, all 134, 715 faxes were sent out in violation of the TCPA. Moreover, it is clear that the universe of class members can be identified through Defendant's records. *See Mullins v. Direct Digital, LLC*, No. 15-1776, 2015 WL 4546159, at *1 (7th Cir. July 28, 2015) (holding that a Plaintiff need not identify each particular class member at the class certification stage, but instead only present a clearly defined class definition and an objective criteria by which membership can be defined.) Any attempt to join all class members individually would render the case unmanageable, while individual lawsuits would unduly burden the litigants and the courts. Thus, the numerosity requirement is met.[2]

### B. Commonality

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied by showing "a common nucleus of operative fact." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The requirement is met in cases where "the

---

[2] Even if the Court were to recognize only faxes sent in waves of 100 or more, the Class would still be too numerous to join individually. See Exhibit L; Exhibit M.

defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters." *Id*. A TCPA class satisfied the "commonality" requirement in another case because the defendant "engage[d] in a standardized course of conduct vis-à-vis the class members, and plaintiffs' alleged injury arises out of that conduct." *Hinman*, 545 F. Supp. 2d at 806-07.

Here, common issues of both fact <u>and</u> law predominate. Common legal issues predominate because the TCPA governs each class member's claim. *See Miner*, 87 Ill. 2d at 19 (common issues of law predominate when the same legal standard applies to all class members). Common factual issues, likewise, predominate because Defendants engaged in standardized conduct involving a common nucleus of operative facts by sending out the same or similar fax advertisement to persons whose contact information was obtained from a list from InfoUSA, and from whom Defendants neither sought nor obtained permission.

The case presents common questions such as (1) the application of the TCPA and applicable FCC rules and regulations, (2) whether Defendants' faxes were each an "advertisement" as defined by the TCPA, (3) the manner and method used to compile or obtain the list of fax numbers to which Defendants' faxes were sent, (4) whether Defendants obtained the recipients' express permission or invitation to send the faxes, (5) whether the recipients received faxes with the necessary opt-out language, as required by law, (6) whether Plaintiff and the other class members are entitled to statutory damages, (7) whether Defendants should be enjoined from faxing advertisements in the future, (8) whether Defendants are liable as a "sender", and (9) whether Defendants' violations were knowing or willful and, if so, whether the Court should treble damages.

Because this case will focus on Defendants' practice of sending unsolicited fax

advertisements, by proving its own claims, Plaintiff will prove the claims of the other class members. As a result, the commonality requirement is met.

### C. Typicality

Rule 23(a)'s third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). *See also Sadowski*, 2008 WL 2224892, *4 ("[T]ypicality 'should be determined with reference to defendant's actions, not with respect to particularized defenses it might have against certain class members.'"... "Plaintiff's claims and the other proposed class members' claims all arise from Defendant's multi-month blast fax campaign. Thus, all class member claims' arise from the same transaction or occurrence (i.e. they all received the same faxes as a result of the same advertising campaign)."). The same is true here. Each of the class members was subjected to the same conduct. Each member's claim is based on the same legal theory as Plaintiff's. Thus, typicality is satisfied.

### D. Adequacy of Representation

#### 1. Rule 23 (a) (4)'s Adequacy Requirement.

Rule 23(a)'s final requirement is that the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy" is met when the representative's interests are not antagonistic to or in conflict with those of the other class members. *Uhl v. Thoroughbred Tech. and Telecom., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). "The burden of showing sufficient interest is relatively modest." *Redmon v. Uncle Julio's of*

*Illinois, Inc.*, No. 07 2350, 2008 WL 656075 at *4 (N.D. Ill. March 7, 2008).

Plaintiff and the other class members seek statutory damages under the TCPA. There is no potential for conflicting interests. There is no antagonism between the interests of Plaintiff and those of the other class members. Plaintiff understands his obligations and the nature of the claims, is involved in the litigation, as evidenced by his deposition, and is interested in representing the class and enforcing the TCPA. Thus, Rule 23(a)(4)'s "adequacy" requirement is satisfied as to Plaintiff.

### 2. Rule 23 (g)'s Class Counsel Adequacy Requirement.

Plaintiff's counsel are experienced lawyers and adequate counsel for the class. *See* Bock & Hatch, LLC firm resumes, attached as <u>Group Exhibit N</u>. They have been appointed as lead or co-lead counsel in many contested class actions, including but not limited to TCPA cases, and have recovered substantial monies for their clients and class members. They have been litigating TCPA claims since 2003 and have prosecuted dozens of such cases to successful resolution, including many class-wide settlements. Plaintiff's counsel will continue to commit adequate resources, both staffing and monetary, to ensure that the Class is properly represented in this case.

## F.  Predominance.

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions. As discussed above, common legal issues predominate because the class members' claims arise under the same federal statute. The *Hinman* court found predominance because the fax broadcasts at issue were sent *en masse* to recipients on a list of "leads" obtained from a third party. *Hinman*, 545 F. Supp. 2d at 808; *see also Sadowski*, 2008 WL 2224892 at *4-5. Here, common fact issues predominate because the class members' claims are focused on Defendant's

fax advertising campaign, which included (1) preparing form advertisements to generate business for Defendant (2) that did not contain proper opt-out notices, and (3) that were sent to persons without prior express invitation or permission. Therefore, Rule 23 (b) (3)'s predominance requirement is met.

**G.     Superiority.**

Rule 23(b)(3) requires that a class action be the superior method for adjudicating the claims. Certifying a class is the "superior" way when the "'class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods. v. Windsor,* 521 U.S. 591, 615 (1997) (*quoting* Adv. Comm. Notes, 28 U.S.C. App., at 697); *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 183 (N.D. Ill. 1992) (Alesia, J.) ("Equally important, judicial economy and efficiency, as well as consistent judgments, are achieved by certifying the class."). *Hinman* found that "resolution of the [TCPA] issues on a classwide basis, rather than in thousands of individual lawsuits would be an efficient use of both judicial and party resources." *Id.*, 545 F. Supp. 2d at 808; *see also Sadowski*, 2008 WL 2224892 at *5 ("class treatment appears to be the superior method of handling Plaintiff's [TCPA] claims."); *Green*, 2009 WL 1810769 *6 ("Resolution of the issues on a classwide basis, rather than thousands (or zero) individual lawsuits is an efficient use of judicial resources. The superiority element is satisfied.").

"Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). In *Murray*, the Court of Appeals reversed the denial of class certification "because the district judge sought to curtail the aggregate

damages for violations he deemed trivial." *Id.* The court held, "[I]t is not appropriate to use procedural devices to undermine laws of which a judge disapproves." *Id. Murray* arose from alleged violations of the Fair Credit Reporting Act, which like the TCPA, provides statutory damages. The Appellate Court explained that the statute "must be enforced rather than subverted." *Id*. From the perspective of the court system and the class members, a class action is superior to individual actions because the maximum recovery for each class member is only $500 and the TCPA does not allow for fee shifting.

## CONCLUSION

The proposed Class meets the requirements of Rules 23(a), (b) (3) and (g). Plaintiff requests that the Court certify the class, appoint Plaintiff as the class representative, and appoint Plaintiff's attorneys as class counsel.

Dated: September 9, 2015　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　s/ Christopher P.T. Tourek
　　　　　　　　　　　　　　　　　　　　　　One of the Attorneys for Plaintiff

Robert J. Sprague　　　　　　　　　　　　Phillip A. Bock
SPRAGUE and URBAN　　　　　　　　　　James M. Smith
26 E. Washington Street　　　　　　　　　Christopher P.T. Tourek
Belleville, IL 62220　　　　　　　　　　　BOCK & HATCH, LLC
Telephone: 618/233-8383　　　　　　　　134 N. La Salle St., Suite 1000
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60602
　　　　　　　　　　　　　　　　　　　　Phone: (312) 658-5500
　　　　　　　　　　　　　　　　　　　　Fax: (312) 658-5555

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 9, 2015, I caused the foregoing to be filed using the Court's CM/ECF System which will send notification of such filing to all counsel of record.

                                                     /s/ Christopher P.T. Tourek