IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DR. ROBERT L. MEINDERS D.C., LTD, Individually and as the Representative of a Class of Similarly Situated Persons,<br><br>Plaintiff,<br><br>vs.<br><br>EMERY WILSON CORPORATION d/b/a STERLING MANAGEMENT SYSTEMS,<br><br>Defendant. | Case No. 14-CV-596-SMY-SCW |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Dr. Robert L. Meinders D.C., LTD. filed a two-count Class Action Complaint, individually and on behalf of all similarly situated persons, against Defendant Emery Wilson Corporation d/b/a Sterling Management Systems ("Sterling") and John Does 1-12 alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1), and common law conversion. Pending before the Court is Plaintiff's Amended Motion for Class Certification (Doc. 68). Sterling filed a response in opposition (Doc. 72). Plaintiff filed a reply (Doc. 76-1)[1]. For the following reasons, Plaintiff's Motion is **GRANTED**.

## Background

Sterling is a corporation that provides management training and consulting services to

---

[1] Plaintiff's Motion for Leave to File Reply Brief *Instanter* is **GRANTED**. The standard for reviewing whether neglect is 'excusable' is an equitable one, taking into consideration relevant circumstances, including (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Sherman v. Quinn*, 668 F.3d 421, 425-26 (7th Cir. 2012). Here, the prejudicial effect on Sterling and the length of the delay are minimal. Further, the Court finds that counsel acted in good faith and the stated reason for the delay was excusable neglect.

1

entrepreneur and business clients (Doc. 69-8, p. 18). To promote its business, Sterling sends faxes to existing and potential customers promoting its workshop seminars and training programs (Doc. 69-8, pp. 116-138). Sterling maintains a customer contact database known as the "central file" containing customer information created and maintained by Sterling employees (Doc. 69-7).

The "central file" database is a storage center for contact information of anyone who expresses interest in a Sterling product or service (Doc. 69-6, pp. 42-45). Sterling obtains leads and new customers by mailing postcards/brochures, signing contracts for services and during workshops and seminars (*Id.*). Once a customer purchases a training program or consulting services from Sterling, they become a "Major" client.[2]

Sterling employees pull numbers from the "central file" to send faxes (Doc. 69-6, p. 73). The "central file" contains 2,322 client fields (Docs. 69-9-69-12). Sterling employees sent faxes to "central file" customers on most days (Doc. 69-8, pp. 46-58). Based on Sterling's AT&T records, during the relevant time period, Sterling sent out thousands of faxes from two Xerox fax machines located in its office (Docs. 69-15, 69-16). Sterling contends that its employees were trained to obtain consent prior to faxing advertisements.

During deposition, former Sterling employee Joshua Gillion testified that he always at least attempted to call customers prior to sending a fax (Doc. 69-8, pp. 50-51). Sterling employee Dana Moraru testified that Sterling employees do not send faxes to every single client (Doc. 69-6, p. 54). Rather, Sterling's unwritten policy is to obtain verbal consent to send faxes (Doc. 69-6, p. 167). Sterling did not regularly maintain copies of materials sent to customers, notes regarding which faxes were sent, or documentation of the consent allegedly obtained (Doc.

---

[2] For example, Plaintiff was designated a "Major" client and placed in Sterling's "central file" after completing a training workshop in 1987 (Doc. 69-7, pp. 203-04). There is no indication from the contract that Plaintiff consented to receiving fax advertisements or correspondence from Sterling (*Id.*).

69-6, pp. 69, 162, Doc. 69-8, p. 51).

Sterling also maintains a "dead file" database complied of customers who either asked to be removed from Sterling's active customer list or customers that have "legal situations" with Sterling (Doc. 69-6, p. 50). After filing suit, Plaintiff was placed in the "dead file" (*Id*. at pp. 47-48). The "dead file' contains 41 entries (*see* Docs. 69-9-69-12).

In 2013, Plaintiff received two faxes from Sterling advertising Sterling seminars in Minneapolis, Minnesota and Chicago, Illinois (Doc. 69-13, pp. 16-21). The faxes did not contain opt-out disclaimers (*Id*.). There is no evidence that Plaintiff consented to receiving fax advertisements (Doc. 69-6, pp. 164-168). Plaintiff contends that Sterling violated the TCPA, which makes it illegal to send an unsolicited fax advertisement unless (1) the sender and recipient have an established business relationship, (2) the recipient voluntarily made its fax number available through specified means, or (3) the fax ad contained a statutorily compliant notice. 47 U.S.C. § 227(b)(1)(C); *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 938 (7th Cir. 2016).

Plaintiff moves for class certification under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks to represent a class defined as follows:

> All persons in Defendant's "central file' or "dead file" databases who were successfully sent one or more facsimiles in the four years prior to April 3, 2014, from Defendant The Emery Wilson Corporation, d/b/a Sterling Management Systems advertising its goods and services.

## **Legal Standard**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541, 2548, 180 L. Ed. 2d 374 (2011)). A district court may certify a case for class-action treatment

3

only if it satisfies the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the conditions of Rule 23(b). *See* Fed.R.Civ.P. 23. In this case, Plaintiff seeks to certify a class under Rule 23(b)(3), so it must show that issues common to the class members predominate over questions affecting only individual members and that a class action is superior to other available adjudication methods. Fed. R. Civ. P. 23(b)(3); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). In addition, a class must be sufficiently definite that its members are ascertainable. *Oshana v. Coca–Cola Co.,* 472 F.3d 506, 513 (7th Cir.2006).

Plaintiff bears the burden of showing that the proposed class satisfies the Rule 23 requirements, but it need not make that showing to a degree of absolute certainty." *Messner*, 669 F.3d at 811 (internal citation omitted). "It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Id*. (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202 (2d Cir.2008)). A class may be certified only if a district court is "satisfied, after a rigorous analysis," that compliance with Rule 23 has been shown, even if the analysis entails some overlap with the merits. *Wal–Mart Stores, Inc,* 131 S.Ct. at 2551.

## Discussion

### Rule 23(a) Requirements

"All class actions, no matter what type, must meet the four explicit requirements of Federal Rule of Civil Procedure 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately

protect the interests of the class (adequacy of representation)." *Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015).

**Numerosity**

"Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *Pruitt v. City of Chicago,* 472 F.3d 925, 926 (7th Cir. 2006). A plaintiff is not required to specify the exact number of persons in the class nor is a plaintiff required to establish the exact identity of the class members. *See Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989) (citation omitted). "A class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.,* 747 F.3d 489, 492 (7th Cir. 2014). "How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified." *Parko v. Shell Oil Co.,* 739 F.3d 1083, 1085 (7th Cir.2014) (emphasis in original). A court may make common sense assumptions in determining numerosity. *Ringswald v. Cty. of DuPage*, 196 F.R.D. 509, 511 (N.D. Ill. 2000).

Sterling's "central file" and "dead file" databases contain over 2000 customers. Sterling employees testified that faxes were sent to customers in the "central file". A class consisting of potentially thousands of recipients of Sterling's fax transmissions is sufficiently numerous to render joinder impracticable, thereby satisfying Rule 23(a)(1).[3]

---

[3] Sterling argues that it did not have a consistent practice of sending fax advertisements to numbers in its central file database and that there is no way to tell a fax's content from the fax transmission records alone. However, Sterling employee Gillion testified that he sent flyers out "most days" (Doc. 69-8, p. 58). The fax transmission records support Gillion's testimony. Further, it is well-established that a class can be certified without determination of its size, so long as it's reasonable to believe it is large enough to make joinder impracticable. *Arnold Chapman & Paldo Sign & Display Co.*, 747 F.3d at 492.

5

**Commonality**

To satisfy commonality, Plaintiff's "claims must depend on a common contention" and "[t]hat common contention…must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc,* 131 S.Ct. at 2551. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998). Such common nuclei are generally present where "defendants have engaged in standardized conduct towards members of the proposed class." *Id.*

Sterling contends that Plaintiff is unable to satisfy the commonality requirement because there is no valid way to show which class members received unsolicited advertisements, thus Plaintiff cannot certify a class based on the "central file" or "dead file" databases or the AT&T fax records. Specifically, relying on recent decisions by the Third Circuit and other non-controlling authority, Sterling argues that Plaintiff's proposed class definition fails because some putative class members may have received non-actionable transaction communication and there is no way to determine if any of the faxes sent qualify as non-actionable. Essentially, Sterling argues that the proposed class is not ascertainable.

Although not explicitly listed under Rule 23, a class may be certified only if its members can be ascertained. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). To show that a class is ascertainable, a plaintiff must offer a definition that is (1) precise, (2) defined by objective criteria, and (3) not defined in terms of success on the merits. *Id*. at 659–60. In *Mullins*, the Seventh Circuit made clear that, at this stage of the litigation, a plaintiff need not prove there is a reliable and administratively feasible way to identify all who fall within the class

6

definition. *Id*. at 657–58. Rejecting an argument similar to Sterling's, the *Mullin's* court declined to apply the Third Circuit's approach, which "goes much further than the established meaning of ascertainability" and "misreads Rule 23":

> Some courts have raised the bar for class actions under Rule 23(b)(3). Using the term "ascertainability," at times without recognizing the extension, these courts have imposed a new requirement that plaintiffs prove at the certification stage that there is a "reliable and administratively feasible" way to identify all who fall within the class definition. These courts have moved beyond examining the adequacy of the class definition itself to examine the potential difficulty of identifying particular members of the class and evaluating the validity of claims they might eventually submit…In effect, it gives one factor in the balance absolute priority, with the effect of barring class actions where class treatment is often most needed: in cases involving relatively low-cost goods or services, where consumers are unlikely to have documentary proof of purchase. These are cases where the class device is often essential "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Mullins*, 795 F.3d at 659.

Plaintiff's proposed class is defined precisely, defined by objective criteria and is not defined in terms of success on the merits. Nothing more is required. The class definition complies with *Mullins* and is, therefore, ascertainable.[4]

Sterling next argues that there is no common nucleus of fact regarding customer permission and Plaintiff cannot demonstrate that Sterling engaged in a "standardized course of conduct vis-à-vis class members. However, "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992).

---

[4] Sterling devotes several pages comparing this matter to *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229 (S.D.Ill. 2011). *Vigus* is not controlling authority. Further, *Vigus*, decided prior to *Mullins*, applied a stringent version of the ascertainability/typicality requirement which, as discussed above, are not required for a Rule 23(b)(2) class action.

Here, the proposed class members claims all arise under the same statute and involve common legal issues. The claims of all class members depend on the resolution of some or all of these key common questions – whether Sterling sent unsolicited fax advertisements in violation of the TCPA; whether Sterling obtained the recipients' express permission or invitation to send the faxes; whether the recipients received faxes with the necessary opt-out language;[5] whether Plaintiff and the other class members are entitled to statutory damages; and whether Sterling's actions were "willful" or "knowing" under the TCPA and, if so, whether Plaintiff and other class members are entitled to trebled damages. *See Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (class certification is normal in litigation under § 227 because the main questions such as whether a given fax is an advertisement are common to all recipients); *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446 (7th Cir.2005).

Finally, Sterling argues that commonality cannot be established because consent is individualized and cannot be inferred on a class basis. More specifically, Sterling asserts that because no TCPA violation occurred if a fax was sent to an individual who consented to receive

---

[5] Sterling argues that whether it provided an opt-out notice is irrelevant because the Federal Communications Commission ("FCC") waived Sterling's compliance with its opt-out notice requirements under regulation 47 C.F.R § 64.1200(a)(4)(iv). In 2005, Congress enacted the Junk Fax Prevention Act ("JFPA"), which amended the fax advertising provisions of the TCPA. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 29 F.C.C. Rcd 13998, 14000 (Oct. 30, 2014) ("Opt–Out Order") (footnote omitted). One new addition was the requirement that opt-out notices be included in unsolicited fax advertisements sent to recipients who have an established business relationship with the sender. 47 U.S.C. § 227(b)(1)(C)(iii). Subsequently, the FCC promulgated regulations implementing the JFPA. Thereafter, a number of entities petitioned the FCC for a declaratory ruling that the requirement that opt-out notices be included in faxes sent with recipients' express prior consent was invalid. *See* Opt–Out Order at 14001. In response to these petitions, the FCC issued the Opt–Out Order, which "affirm[ed] that the [FCC's] rules require that an opt-out notice must be contained on all fax ads," even those sent to consumers who "previously agreed to receive fax ads from such senders." *Id.* at 13998, 14005. However, pursuant to the Opt-Out Order, the FCC retroactively waived application of the opt-out requirement to the petitioners and gave similarly-situated parties six months to seek retroactive waivers as well. Sterling sought and received a waiver on August 28, 2015. However, as Plaintiff correctly notes, Sterling's fax advertisement can only evade the required opt-out notice if the recipient had given prior express permission or consent. If, however, a fax recipient did not provide consent, but instead only had an existing business relationship with Sterling, then the opt-out requirement is still effective. In this case, Sterling does not have the records to establish consent and can only demonstrate existing business relationships with putative class members. Thus, Sterling's receipt of a waiver would not change the scope of the class or resolve the issue of consent.

it, this Court will have to engage in an individualized inquiry as to whether each class member consented to receive the fax. Factual variations amongst class members' claims, however, do not necessarily defeat class certification as long as the representatives claims are based on the same course of conduct and legal theory as the class as a whole. *De LaFuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). Therefore, commonality is satisfied.

**Typicality**

For typicality, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586. The typicality requirement addresses the separate concerns that (1) the representative's claim may fail on unique grounds, dooming meritorious claims of absent class members; or (2) the representative's claims may prevail on unique grounds, and the representative may therefore fail to adequately present alternative grounds under which the unnamed class members could prevail on their own claims. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011). It is well-established that typicality is satisfied if the named representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992).

Sterling contends Plaintiff's claim is not typical of the class because it is vulnerable to unique defenses and objections: Plaintiff allegedly consented to contact via fax and Sterling had a continuous business relationship with Plaintiff beginning when Plaintiff attended a workshop and received consultation services in 1987. Based on Sterling's alleged unchanged business practices, Sterling argues that it is "possible" Plaintiff provided its fax number to Sterling prior

9

to, during, or after the 1987 workshop. Sterling further contends that it is "possible" Sterling called Plaintiff before sending the subject faxes. Based on these suppositions, Sterling asserts that Plaintiff's claim fails. This argument is without merit.

The record establishes that any evidence of possible prior express consent has been destroyed. Other than speculation, Sterling has not produced evidence that Plaintiff indeed consented. Further, the fact that twelve out of a class of potential thousands provided prior express permission to receive fax advertisements does not vitiate typicality.[6] "For an assault on the class representative to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining the plaintiff's credibility that a fact-finder might reasonably focus on plaintiffs credibility, to the detriment of the absent class members' claims." *C.E. Design Ltd.,* 637 F.3d at 728. Here, no such evidence exists. Given that Plaintiff's claims and the claims of the proposed class members arise from Sterling's alleged violation of the TCPA, each member's claim is based on the same legal theory as Plaintiff. Thus, typicality is satisfied.

**Adequacy**

As for adequacy, a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted). Sterling does not challenge the adequacy of class counsel and the Court has no reason to believe they are not qualified or that they will not fairly and adequately represent the interests of the class.

---

[6] As further support, Sterling attaches the affidavit of twelve of its customers who attest to providing express permission to receive fax advertisements (Doc. 72-1).

Plaintiff's counsel are experienced attorneys who have been appointed as lead or co-lead counsel in numerous class actions around the country, including class actions involving the TCPA (Doc. 69-18). Therefore, the Court will only analyze whether the named Plaintiff is an adequate representative.

The adequacy requirement is satisfied when the named representatives have "a sufficient interest in the outcome of the case to ensure vigorous advocacy" and "[do] not have interests antagonistic to those of the class." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D.Ill.2009) *aff'd*, 606 F.3d 391 (7th Cir.2010). Sterling argues that Plaintiff is not a suitable class representative because his claims are subject to the unique defense of "prior express permission." As discussed previously, this argument is rejected. The evidence (or lack thereof) in the record does not suffice to call Plaintiff's typicality or adequacy into question. Further, Plaintiff's motive for bringing suit is not so obviously improper or antagonistic to the class that Plaintiff could not be its representative. Accordingly, adequacy is satisfied.

### **Rule 23(b)(3) Requirements**

In addition to the requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one of Rule 23(b)'s three subsections. Here, Plaintiff proceeds under subsection (3), which allows for certification upon a finding that "questions of law or fact common to members of the class predominate over any questions affecting only individual members," and also that "a class action is superior to other available methods for resolving the controversy." Fed. R. Civ. P. 23(b)(3).

**Predominance**

"Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single

adjudication." *Messner*, 669 F.3d at 815 (quotation omitted). "If, to make a *prima facie* showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a *prima facie* showing, then it becomes a common question." *Id*. (quotation omitted). Predominance "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Plaintiff asserts that common issues of law and fact predominate in this action. Sterling vigorously counters that individualized issues regarding whether clients consented to receive fax advertisements will predominate. Sterling's argument is frequently asserted and rejected in TCPA cases involving fax broadcasting.[7] As succinctly summarized in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92, 106 (N.D. Ill. 2013), a helpful rule that can be extracted from TCPA cases regarding whether issues of individualized consent predominate over common questions of law or fact is that "individualized consent predominate when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented." *Jamison*, 290 F.R.D. at 106-07.

Although Sterling has provided some evidence that class members *may* have consented to receiving fax advertisements, this evidence is far from overwhelming. That evidence includes the affidavits of twelve clients (out of a class of potential thousands) attesting to providing

---

[7] *See, eg*, *G.M. Sign, Inc. v. Group C Communications, Inc.,* 2010 WL 744262, at *6 (N.D.Ill. Feb. 25, 2010); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.,* 679 F.Supp.2d 894 (N.D.Ill. Jan. 21, 2010); *CE Design v. Beaty Const., Inc.,* 2009 WL 192481, at *7 (N.D.Ill. Jan. 26, 2009); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.,* 2008 WL 3889950, at *6 (N.D.Ill. Aug. 20, 2008); *Green v. Service Master On Location Services Corp.,* 2009 WL 1810769, at *2 (N.D.Ill. June 22, 2009); *Hinman v. M and M Rental Center, Inc.,* 545 F.Supp.2d 802 (N.D.Ill.2008); *see also* numerous cases cited by Plaintiff (Doc. 69, pp. 8-9).

Sterling prior express consent for fax transmittals and the testimony of two Sterling employees that consent was routinely elicited prior to sending fax transmittals. Sterling also contends that there is no way to determine consent due to lack of record keeping. However, Sterling may not rely on its own failure to obtain and retain records of who consented to receiving fax advertisements in order to defeat class certification in this matter. *See Mullins*, 795 F.3d at 668 ("[R]efusing to certify on this basis effectively immunizes defendants from liability because they chose not to maintain records of the relevant transactions.").

Here, the class members' claims arise under the same federal statute – the TCPA. As the Seventh Circuit has noted, class certification is normal in litigation under the TCPA because the main questions, such as whether a given fax is an advertisement, are common to all recipients. *Ira Holtzman*, 728 F.3d at 684. In this case, the claims relate to each member's receipt of faxes advertising Sterling's goods and services. Common questions include whether the faxes were "advertisements" under the TCPA, whether class members consented to receive the faxes, and whether Sterling's acts were willful or knowing. Sterling's arguments regarding consent are also questions that are common to the class and central to determination of the claims of the class members.[8] Accordingly, predominance is satisfied.

**Superiority**

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, there are a large number of potential class members each with the same claim under the same statute and

---

[8] Sterling also asserts that individualized issues regarding whether a fax constitutes an advertisement will predominate. However, as Sterling notes, the TCPA only applies to faxes advertising the commercial availability or quality of any property, goods, or services. Whether the faxes were advertisements as defined by the TCPA is a common question necessary for each member to establish to make a *prima facie* showing. If the same evidence will suffice for each member, then it becomes a common question. *Messner*, 669 F.3d at 815. Accordingly, Sterling's argument is rejected.

13

each potentially entitled to a relatively small recovery – the statutory damages under the TCPA are only $500. 47 U.S.C. § 227(b)(3). Deciding each claim separately would be an extremely inefficient use of both judicial and party resources and because of the small individual recovery, many plaintiffs would not even bring their claims. This situation makes Plaintiff's claims ideal for resolution as a class action. *See Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 953 (7th Cir.2006) ("Rule 23(b)(3) was designed for situations ... in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate") *citing Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997). As such, this Court finds that the resolution of these issues on a class-wide basis is superior to allowing repetitive individual suits. Accordingly, Plaintiff meets the requirements for class certification under Rule 23.

## Conclusion

For the foregoing reasons, Plaintiff's Amended Motion for Class Certification (Doc. 68) is **GRANTED** and the Court **CERTIFIES** the following class pursuant to Federal Rule of Civil Procedure 23:

> **All persons in Defendant's "central file' or "dead file" databases who were successfully sent one or more facsimiles in the four years prior to April 3, 2014, from Defendant The Emery Wilson Corporation, d/b/a Sterling Management Systems advertising its goods and services.**

The Court **APPOINTS** Dr. Robert L. Meinders D.C., LTD. as Class Representative. The Court further **APPOINTS** Phillip Bock, Christopher Tourek, James Smith, Jonathan Piper and the law firm Bock & Hatch, LLC as Class Counsel.

**IT IS SO ORDERED.**

**DATED: June 21, 2016**

                                            **s/ Staci M. Yandle**
                                            **STACI M. YANDLE**
                                            **United States District Judge**